**Roscoe L. HOWARD, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 91–1793.

United States Court of Veterans Appeals.

May 13, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, World War II veteran Roscoe L. Howard, appeals from a July 17, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to service connection for residuals of frozen feet and a compensable evaluation for a left-shoulder shell-fragment wound (SFW) scar. *Roscoe L. Howard,* BVA 91–21529 (July 17, 1991). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. Summary disposition is appropriate here because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet. App. 23, 25–26 (1990).

## I. Procedural History

On March 29, 1993, the Court issued a single-judge memorandum decision on this appeal affirming the July 1991 BVA decision. On April 12, 1993, appellant, through counsel, filed a motion for review by a three-judge panel of the Court. The Court now, sua sponte, withdraws its March 29, 1993, decision and issues this decision in its place. The appellant's motion for panel review of the March 29, 1993, decision is denied as moot by a panel order issued on this date. For the reasons set forth below, the Court will grant the Secretary's motion for summary affirmance in part and affirm the Board's decision as to the left-shoulder SFW claim, and will deny that motion in part, vacate the BVA decision as to the frozen-feet claim, and remand that matter to the Board.

## II. Background

The veteran had active service in the United States Army from July 1942 to October 1945, including combat duty in Europe. R. at 1, 2. His service medical records are negative for complaints of or treatment for either frozen feet or a *left-* shoulder injury. R. at 1–33. The report of his separation examination shows that he was treated in June 1945 for wounds received to his *right* arm. R. at 33. In November 1989, the veteran sought service-connected disability compensation for residuals of frozen feet and an SFW scar of the left shoulder. R. at 59. Although his service medical records showed treatment for an injury received to his *right* arm (R. at 33), he contended that he had sustained an in-service injury to the *left* shoulder. *Ibid.* A November 1989 Department of Veterans Affairs (VA) medical examination confirmed the presence of a "healed [gunshot wound] of the left shoulder". R. at 65.

On December 26, 1989, a VA regional office (RO) awarded the veteran service connection for a left-shoulder SFW scar, rated as noncompensable, and denied service connection for residuals of frozen feet. R. at 67. That rating decision was confirmed by the RO on May 22, 1990. R. at 77. Following an appeal to the BVA, the BVA issued the adverse July 17, 1991, decision here on appeal. In denying the appellant's claims, the Board concluded that, based on the evidence of record, he was not entitled to a compensable rating for his service-connected left-shoulder SFW scar and that he had not presented a well-grounded claim for service connection for frozen-feet residuals. *Howard,* BVA 91–21529, at 5.

## III. Analysis

### A. Frozen Feet

Pursuant to 38 U.S.C.A. § 5107(a) (West 1991), "a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded". "A well[-]grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Once a claimant for VA benefits submits a well-grounded claim, "[t]he Secretary shall assist such a claimant in developing the facts pertinent to the claim". 38 U.S.C.A. § 5107(a) (West 1991); *see* 38 C.F.R. § 3.159 (1992). Under 38 U.S.C.A. § 1154(b) (West 1991):

> In the case of any veteran who engaged in combat with the enemy in active service ... during a period of war, campaign, or expedition, *the Secretary shall accept as sufficient proof of service-connection* of any disease or injury alleged to have been incurred in or aggravated by such service *satisfactory lay or other evidence of service incurrence* or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service.... Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary.

(Emphasis added.) *See* 38 C.F.R. § 3.304(d) (1992) (to the same effect); *Sheets v. Derwinski,* 2 Vet.App. 512, 514–15 (1992) (the law specifically provides that

service connection may be proven by satisfactory lay evidence without the support of official records). The Board is required to consider and discuss the applicability of all potentially applicable provisions of law. *See Schafrath v. Derwinski,* 1 Vet.App. 589, 592–93 (1991); *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990).

■ In support of his claim for service connection for frozen-feet residuals, the veteran submitted an August 1989 note from a private physician, Dr. Donald F. Tarr, stating that "His [the veteran's] feet were frozen in combat ... and the result has been deficient circulation to the feet and consequent soreness[,] ... itching, [and] numbness...." R. at 61. A December 1989 VA medical examination report contained the following assessment of the veteran's condition:

> Residuals of frostbite when feet [were] frozen during WWII.... Residual painful feet with pain on walking and pain on weight bearing and pain at rest with numbness of feet as well as significantly impairs [sic] all of the veteran's activities of daily living in and out of the home. The pain is chronic; constant and disturbs [the] veteran[']s rest at night.

R. at 65. Although it is unclear whether either of these medical statements does more than recite history supplied by the veteran, the veteran's assertions to that effect would, under statutory section 1154(b) and regulatory section 3.304(d), set forth a prima facie case. Hence, these medical statements are enough, as a matter of law, to make his frozen-feet claim a "plausible claim, one which is ... capable of substantiation." *Murphy,* 1 Vet.App. at 81. The Court thus holds, as a matter of law, that the veteran's claim was well grounded and thus triggered VA's duty to assist under section 5107(a). *See Harvey v. Principi,* 3 Vet.App. 343, 345 (1992); *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992); *Murincsak v. Derwinski,* 2 Vet.App. 363, 373 (1992) (where a well-grounded claim has been presented, the statutory duty to assist requires VA to obtain all pertinent medical records which have been called to its attention by the veteran and the evidence of record).

■ In denying service connection for frozen feet, the Board stated:

> [T]he service medical records are devoid of any complaint or finding demonstrating that the veteran either incurred or aggravated frozen feet while on active duty. Further, physical examination at separation in October 1945, and 30 years later at a November 1975 [VA] compensation examination[,] revealed normal feet.

*Howard,* BVA 91–21529, at 4. Pursuant to section 1154(b), the Board was required to accept as sufficient proof of service connection the 1989 medical evidence from VA and private physicians if such evidence was "satisfactory" and "consistent with the circumstances, conditions, or hardships" of the veteran's service, unless such evidence was rebutted by "clear and convincing evidence to the contrary." *See Sheets,* 2 Vet. App. at 515. Moreover, because section 1154(b) expressly provides for service connection to be awarded where there are no official records of service incurrence, the absence of such records may not itself constitute "clear and convincing evidence" to reject a combat veteran's lay or medical evidence if that evidence is "satisfactory" and "consistent with the circumstances, conditions, or hardships" of service. *Sheets, supra.*

■ In the present case, the duty to assist required, at a minimum, that the Board seek clarification from Dr. Tarr and the VA physicians, Drs. Grossman and Fulton, who examined the veteran in 1989, to determine whether their statements that the veteran suffered from residuals of frozen feet incurred during his World War II service constituted medical diagnoses of that condition and its probable etiology or were merely reiterations of history provided by the veteran. *See* 38 C.F.R. § 4.2 (1992) ("if the [examination] report does not contain sufficient detail, it is incumbent upon the rating board to return it as inadequate for evaluation purposes"); *Ivey v. Derwinski,* 2 Vet.App. 320, 323 (1992) (remand to seek further opinion from physician who had examined veteran); *Green (Victor) v. Derwinski,* 1 Vet.App. 121, 124

(1991) (remand for clarification under § 4.2). The Board should request the examiners to explain the basis for any opinion that the residuals of frozen feet are related to service in light of the absence of any noted frozen-feet residuals on the veteran's 1945 separation examination and 1975 VA examination.

On the basis of the foregoing analysis, the Court will vacate that portion of the Board's decision denying service connection for residuals of frozen feet and will remand that claim to the Board for prompt further development and readjudication thereafter, including discussion of the evidence in terms of section 1154(b).

### B.  Left Shoulder

■■■■ In November 1989, the veteran submitted a well-grounded claim, supported by medical evidence, for service connection for a left-shoulder injury. R. at 59. In December 1989, the RO granted service connection for residuals of a left-shoulder SFW and assigned a noncompensable rating. R. at 66–67. The veteran appealed that decision insofar as it failed to award a compensable rating (R. at 68) and, on appeal, the BVA denied entitlement to a compensable rating. Under 38 U.S.C.A. § 7104(d)(1) and the Court's precedents beginning with *Gilbert v. Derwinski*, 1 Vet. App. 49, 56 (1990), a claimant is entitled to a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions." 38 U.S.C.A. § 7104(d)(1) (West 1991). The reasons or bases must include an "analysis of the credibility or probative value of the evidence submitted by or on behalf of the [claimant] ... [and] a statement of the reasons or bases for ... rejection of this evidence by the Board." *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 217 (1991); *see also Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991). Moreover, the Board may not rely on its own unsubstantiated medical conclusions to reject expert medical evidence in the record; rather, the Board may reject a claimant's medical evidence only on the basis of other independent medical evidence. *See Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991); *Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992). The degree of specificity required of the Board's reasons or bases is particularly great when, as here, the Board's conclusions are of a "scientific or medical nature". *Sammarco v. Derwinski*, 1 Vet. App. 111, 112 (1991); *Murphy*, 1 Vet.App. at 81.

■■■■ Supporting the veteran's claim for an increased rating for residuals of a left-shoulder SFW scar was Dr. Tarr's August 1989 note stating that the veteran "has chronic tendinitis and bursitis in the L[eft] shoulder girdle. This renders the joint less mobile than normal. He cannot raise his arms above his head". R. at 60. The evidence of record also included: (1) a March 1990 anonymous statement (which the veteran's representative identified as a "doctor's statement" (R. at 75)) that "[a]lthough I never directly treated his shoulder other than a bursitis and tendonitis [sic] in both shoulders, I did notice there was an immobility about 50%, in the left shoulder compared to the right" (R. at 76); (2) a 1975 examination report from Dr. Tarr noting "probable arthritis of the shoulders" (R. at 47); (3) a November 1989 VA examination report noting that the veteran had equal range of motion in both shoulders including 90 degrees of flexion and abduction and 40 degrees of internal and external rotation (R. at 64); and (4) a December 1989 VA X-ray report noting "degenerative arthritis of shoulders associate[d] with limitation of motion of the shoulders which in the opinion of the undersigned is as expected in a man of his age" (R. at 65). On that December 1989 X-ray report, the examiner further stated: "[Status post] superficial healed [gunshot wound] of the left shoulder; with healed wound of entry and no observable wound of exit; and no observable retained foreign metallic bodies. The healed dry scar is of minor cosmetic significance and is the sole found residual." R. at 65.

In denying a compensable rating for his service-connected left-shoulder disability, the Board stated:

> [R]ange of motion study disclosed limited left shoulder motion, and X-ray study

showed evidence of degenerative acromioclavicular joint changes. Significantly, however, the limitation of left shoulder motion demonstrated was identical to that shown by the right shoulder. Further, the X-ray study revealed the degenerative changes to be present in both shoulders and the examiner offered that they were consistent with the veteran's age, not [SFW] residuals.... Accordingly, while the veteran does display a left shoulder [SFW] scar, there is no reasonable basis to award a compensable evaluation. In reaching this decision, the Board carefully considered all of the contentions presented by the veteran and his representative, including those based on the evidence provided by Donald F. Tarr, M.D. In this latter regard, however, Dr. Tarr's findings do not provide a reasonable basis to award a compensable evaluation as he considered several non[-]service-connected disabilities in reaching his opinions.

*Howard,* BVA 91–21529, at 4–5. There is nothing in the record indicating that Dr. Tarr's August 1989 statement was based, in any way, on "several non[-]service-connected disabilities" (*see* R. at 60–61); the record does not exclude the possibility that the chronic tendinitis and bursitis reported could have been related to the SFW. Additionally, the Board's decision omits any discussion of the supposed March 1990 medical report noting "an immobility about 50% in the left shoulder, compared to the right". However, despite the Board's failure to articulate the "reasons or bases" for its decision "as distinctively or as clearly" as contemplated under 38 U.S.C.A. § 7104(d)(1), the Court is able to rule on the merits of this appeal based upon a review of the record. *Soyini v. Derwinski,* 1 Vet. App. 540, 546 (1991). That is because there is a total absence of medical evidence of record attributing either the chronic tendinitis or bursitis or the limited range of motion in the veteran's left shoulder to his service-connected SFW scar. Thus, because there is a plausible basis in the record for the Board's decision, as set forth above, and because the "overwhelming" weight of the evidence (*ibid.*) militates

against awarding a compensable evaluation for the veteran's service-connected SFW scar, the Court holds that the Board's failure to provide an adequate statement of reasons or bases is, in this case, harmless error. *See ibid;* 38 U.S.C.A. § 7261(b); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991) (failure to take into account medical evidence as to one rating-schedule criterion is harmless error when other rating schedule prerequisites to higher rating "are not supported in the record to any extent"). Accordingly, the Board's decision will be affirmed as to the claim for a compensable rating for the left-shoulder SFW.

## IV. Conclusion

Upon consideration of the record, the appellant's informal brief, and the Secretary's motion, the Court holds that, with respect to his left-shoulder SFW claim, the appellant has not demonstrated that the BVA committed error, in its findings of fact, conclusions of law, procedural processes, consideration of the benefit-of-the-doubt rule, or articulation of reasons or bases, that would warrant remand or reversal under 38 U.S.C.A. §§ 7252, 5107(a), (b), 7104(d)(1), 7261 (West 1991) and the analysis in *Gilbert, supra.* The Court grants the Secretary's motion for summary affirmance in part and summarily affirms the July 17, 1991, BVA decision insofar as it denied the appellant's claim for a compensable rating for his left-shoulder SFW. However, the Court summarily vacates the BVA decision insofar as it denied the claim for service connection for residuals of frozen feet and remands that matter to the BVA for prompt further development and readjudication, consistent with this decision, on the basis of all evidence of record and all applicable law and regulation. *See* 38 U.S.C.A. § 7104(a), (d)(1) (West 1991); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991).

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.